■ In the Matter of MARGARET HALL, Petitioner, v JOSEPH D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of the respondent State Commissioner of Social Services, dated August 30, 1979 and made after a statutory fair hearing, which affirmed a determina-

tion of the local agency to discontinue a grant of home relief to petitioner for a period of 60 days. Petition granted, determination annulled, on the law, without costs or disbursements, and respondents are directed to restore to petitioner all public assistance withheld from her pursuant to the determination. At all times relevant hereto, petitioner was 61 years old and resided alone. On June 29, 1979 the Employment Referral Center of the Nassau County Department of Social Services (the local agency) mailed petitioner a letter stating that, in order for her to remain eligible for public assistance, it was necessary for her to come to its office on July 3, 1979 "for a new Public Work Project Assignment." Although petitioner appeared as directed, on July 9, 1979 the local agency mailed her a notice that it intended to discontinue her public assistance grant, stating its reason therefor as follows: "[Y]ou claim to be ill and therefore unable to work in the Public Work Project." No legal authority for the proposed action was cited in the notice. Petitioner requested a fair hearing to contest the proposed discontinuance. At the fair hearing, at which petitioner appeared *pro se,* the local agency's case consisted of the introduction of a "fair hearing summary" prepared for purposes of the hearing, a brief oral explanation of that summary by an employee who had no personal knowledge of the events of July 3, 1979, and a number of documents. One of these documents indicated that petitioner had been found to be employable as of June 13, 1979. Another was an untitled document signed by one "G. Grant" over the signature line for "Project Supervisor" and dated July 3, 1979. The document indicated that petitioner "failed to continue to participate" in a public work project and noted that she "claims she is ill [and] unable to work." The local agency also submitted a "comment sheet" upon which entries with respect to petitioner's public assistance case had been made, presumably by a number of employees of the local agency. The entry for July 3, 1979, which is neither signed nor initialed, states, among other things, that petitioner "claims she can't work." The position of the local agency at the fair hearing, as expressed by its employee and in its fair hearing summary, was that on July 3, 1979, petitioner had "claimed she was too ill to work." This position was apparently derived from the above-described notations. There was no testimony concerning under what circumstances those notations had been made, or whether any of them had been made by the person who interviewed petitioner. Petitioner testified that when interviewed on July 3, 1979, she told the interviewer the following: "I had to go to the clinic the 13th of July and not to put me out in anything right then until I see what was what, then that they were talking about admitting me. And I was admitted July the 18th." She added almost immediately thereafter: "And that's all I said, I didn't say I was too ill to go to work, I'm willing to go to work, but I want to see what the results are going to do. It's no use me starting something, then I have to take off." Petitioner opined that the interviewer had misinterpreted her statements. Petitioner submitted a letter from the Nassau County Medical Center stating that she had been admitted thereto on July 18, 1979 and had signed herself out of the hospital on July 23, 1979. She explained that she had signed herself out because her operation scheduled for that date had been "cancelled" until a later date and she "couldn't see losing [her] Medicaid card staying in the hospital for no reason at all." When asked why she could not have worked from July 3, 1979 to July 18, 1979, petitioner replied: "She didn't give me nothing to go out on. Only thing as I said, if I start anything was on a Friday and I would have to take out *[sic]* if they admitted me, which I had to go back to the clinic the 13th." In her "decision after fair hearing" the State commissioner found, on the evidence adduced at the hearing, that on July 3, 1979, petitioner "refused employment and did not provide a valid reason for such refusal." She concluded that petitioner had "refused referral to *[sic]* public works project",

stating "[a]lthough the [petitioner] contends that she was physically unable to work, her own physician on June 15 found her employable as of June 9, 1979." Based upon this conclusion, the State commissioner affirmed the local agency's determination to discontinue petitioner's grant for 60 days. At the outset, we note that since, among other things, the "comment sheet" notation was neither signed nor initialed, there was no evidence that either that notation or the document signed by the project supervisor was prepared by the person who interviewed petitioner, and there was no evidence concerning the circumstances under which those documents were prepared, they do not constitute substantial evidence that petitioner, claiming to be physically unable to work, refused referral to a public works project. (See *Matter of Roach v Toia*, 58 AD2d 652; *Matter of Privitera v Lavine*, 45 AD2d 915.) Nor does petitioner's testimony, under any reasonable interpretation, constitute such evidence. Thus, since there is not substantial evidence in the record to support discontinuance of petitioner's grant on the ground stated in the notice of intent to discontinue provided to her and relied on by the State commissioner, we might well decline to confirm the determination on that ground. (See *Securities Comm. v Chenery Corp.*, 332 US 194, 196; 18 NYCRR 358.8 [a] [2].) However, in our view, the determination must be annulled because there is not substantial evidence in the record that petitioner, for any reason, "fail[ed] to accept referral to report to or participate in work relief on a public work project" within the meaning of former 18 NYCRR 385.6 (a) (8), the then applicable regulation. In determining the type of conduct embraced within this regulation, it is useful to bear in mind that where a recipient has been found to have engaged in the proscribed conduct, without good cause, the inevitable consequence is that he is deprived of the entire amount of his grant for a period of at least 30 days and, in some circumstances, 60 or 90 days (see 18 NYCRR 385.8). In some cases, such as petitioner's, this may amount to a deprivation of the recipient's entire income. We bear the nature of the prescribed penalty in mind not because it would cause us to pause in confirming a determination where the evidence was sufficient that a recipient had refused employment without good cause. We do so only because the gravity of the penalty that necessarily attends an unjustified failure to accept a referral to employment is of some assistance to the court in assessing the kind and level of unacceptable conduct which is embraced within such a regulation. As we read petitioner's testimony, it appears that she was never referred to a particular job, and thus never failed to accept such a referral. However, the question remains whether petitioner's statement to the interviewer that the interviewer "not *** put [her] out on anything right then" because of impending necessary medical appointments amounts to the kind of willful refusal, albeit anticipatory in nature, that was intended to be embraced within the regulation (see *Matter of Meadows v Berger*, 56 AD2d 630; see, also, Social Services Law, § 131, subd 5; 18 NYCRR 385.7 [a] [2] [vi]). We think not. We need not exhaustively define the parameters of the applicable regulation here. To decide this case, we think it is sufficient to make the following observations, which are based on petitioner's uncontroverted testimony. Apparently before petitioner was referred to any specific job, she stated her belief that she should not be assigned to a job because she had necessary medical appointments upcoming in the near future which would require her to discontinue any job she might start. For all we can tell from this record, the interview may very well have ended there. Thus, there was no evidence that petitioner was advised that there were jobs available which she could adequately perform even if her performance would be interrupted by her hospital stay. Moreover, as in *Matter of Roach v Toia (supra)* and *Matter of Pringle v Nassau County Dept. of Social Servs.* (73 Misc 2d 743), which also involved something less than an unequivocal refusal of all employment, there was no

evidence that the interviewer told petitioner that her statement carried any consequences or rendered her liable to the discontinuance of her public assistance if it were not withdrawn. Accordingly, we conclude that the record does not contain substantial evidence that petitioner engaged in the kind of willful refusal proscribed by the then applicable regulation, 18 NYCRR 385.6 (a) (8). Hopkins, J. P., Titone, Rabin and Margett, JJ., concur.